Mark E. Bale (SBN 174921)
**SCHWARTZ SEMERDJIAN CAULEY SCHENA & BUSH LLP**
101 West Broadway, Suite 810
San Diego, California 92101
Telephone: (619) 236-8821
Facsimile: (619) 236-8827
mark@sscelaw.com

Attorneys for Plaintiff
PROCESSPOINT INVESTMENTS LIMITED

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PROCESSPOINT INVESTMENTS LIMITED,<br>Plaintiff,<br>v.<br>PHARMA FUNDING, LLC, PHARMA FUNDING ARAV, LLC, WELLNESS FUNDING, LLC, LCAP ADVISORS, LLC, ANAND NARAYANAN, COGENT ELEVEN, LLC and AMY TOMCHAK,<br>Defendants. | Case No.: 8:24-cv-01593-JVS-DFM<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS**<br><br>Hearing Date: March 31, 2025<br>Hearing Time: 1:30PM<br>Judge: James V. Selna<br>Courtroom: 10C |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. RELEVANT FACTUAL BACKGROUND ........ 2

III. RELEVANT PROCEDURAL HISTORY ........ 5

IV. ARGUMENT ........ 6

A. LEGAL STANDARD ........ 6

B. THE SAC STATES A CLAIM FOR ALTER EGO LIABILITY AGAINST MOVING DEFENDANTS ........ 7

i. The SAC Sufficiently Alleges that Moving Defendants Exercise Dominion and Control Over Pharma Funding ........ 9

ii. The SAC Sufficiently Alleges Unfairness and Injustice ........ 15

C. MOVING DEFENDANTS FAIL TO ADDRESS THE VOIDABLE TRANSACTION CLAIM, WHICH IS SUFFICIENTLY PLED IN ANY EVENT ........ 19

D. TO THE EXTENT THE COURT IS INCLINED TO GRANT THE MOTION, LEAVE TO AMEND SHOULD BE GRANTED ........ 22

V. CONCLUSION ........ 23

# TABLE OF AUTHORITIES

**Cases**

*Alba v. City of Barstow*,
No. EDCV 18-2087 (JGB), 2019 WL 6703426 (C.D. Cal. Oct. 30, 2019).......14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................6

*Ayo v. Dunn*,
No. 17-cv-526-SDD, 2018 WL 4355199 (M.D. La. Sept. 12, 2018) ................20

*Blair v. Infineon Techs. AG*,
720 F. Supp. 2d 462 (D. Del. 2010) ..........................................................8, 14

*CGI Tech. and Solutions Inc. v. Acacio*,
No. SACV 17-1943 JVS (KESx), 2019 WL 7882368 (Mar. 26, 2019) (Selna, J.) ..........................................................................................................20, 21

*ConsumerDirect, Inc. v. Pentius, LLC*,
No. 8:21-cv-1968-JVS, 2022 WL 1585702 (C.D. Ca. Apr. 4, 2022) (Selna, J.) 7, 16-17

*Essar Steel Algoma, Inc. v. Nev. Holdings, Inc.*,
No. 17 Misc. 360 (AT), 2020 WL 2539031 (S.D.N.Y. May 18, 2020).......12, 16

*Fletcher v. Atex, Inc.*,
68 F.3d 1451 (2d Cir.1995) .......................................................................8, 16

*Gourdine v. Karl Storz Endoscopy-Am., Inc.*,
223 F. Supp. 3d 475 (D.S.C. 2016) ...........................................................16

*Harrison v. Soroof Int'l, Inc.*,
320 F. Supp. 3d 602 (D. Del. 2018) ...........................................................8

*In re Hydroxycut Marketing and Sales Practices Litig.*,
810 F. Supp. 2d 1100 (S.D. Cal. 2011) .......................................................8

*In re Kwok*,
663 B.R. 124 (Bankr. D. Conn. 2023)....................................................10
*Jiaxing Super Lighting Elec. Appliance Co. v. Bruggeman*,
No. 21-cv-08489-MMC2022 WL 17404300 (N.D. Cal. Dec. 2, 2022).............20
*Johnson v. Knapp*, No. CV 02-9262-DSF (PJW),
2009 WL 764521 (C.D. Cal. Mar. 16, 2009) ....................................................7
*JPV I L.P. v. Koetting*,
88 Cal. App. 5th 172 (2023)..........................................................8, 12, 18
*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)...........................................................................14
*Laguna v. Coverall North America, Inc.*,
No. 09cv2131 JM, 2009 WL 5125606 (S.D. Cal. Dec. 18, 2009).....................15
*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001).........................................................................6, 7
*Ma v. Chertoff*,
No. 07CV0033 JAH(POR), 2007 WL 2462103 (S.D. Cal. Aug. 27, 2007) .....20
*Manichaean Capital, LLC v. Exela Tech., Inc.*,
251 A.3d 694 (Del. Ch. 2021) ....................................................................9, 11
*Mark Tucker, Inc. v. Cathy Jean Inc.*,
No. SACV 16-01095 JVS, 2016 WL 10988799 (C.D. Cal. Sept. 16, 2016).....12
*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,
No. 07-cv-912-IEG, 2008 WL 346421 (S.D. Cal. Feb. 6, 2008).......................14
*McBeth v. Porges*,
171 F. Supp. 3d 216 (S.D.N.Y. 2016)..........................................................9, 11
*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989)...........................................................................15

*NetJets Aviation, Inc. v. LHC Communs., LLC*,
537 F.3d 168 (2d Cir. 2008) ....................9, 12, 15

*Official Comm. of Unsecured Creditors v. Reliance Capital Grp., Inc. (In re Buckhead Am. Corp.)*, 178 B.R. 956 (D. Del. 1994) ....................10

*Pacific Biosciences of California, Inc. v. Oxford Nanopore Tech., Inc.*,
No. 17-cv-275-LPS, 2019 WL 1789781 (D. Del. Apr. 24, 2019) ....................10

*Pipeline Prods., Inc., Pipeline Prods., Inc. v. Madison Companies, LLC*,
428 F. Supp. 3d 591 (D. Kan. 2019) ....................19

*Pro 49 Dev., LLC v. Ness Express 1, LLC*,
No. 24-cv-01850-JAM, 2024 WL 4712389 (E.D. Cal., Nov. 7, 2024)..........8, 11

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010)....................6

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017)....................15

*Tatung Co. Ltd. v. Shu Tze Hsu*,
217 F. Supp. 3d 1138 (S.D. Cal. 2016) ....................10, 20

*TradeWinds Airlines, Inc. v. Soros*,
No. 08 Civ. 5901, 2012 WL 983575 (S.D.N.Y. Mar. 22, 2012)....................13, 16

*Triller Fight Club II LLC v. H3 Podcast*,
No. LA CV21-03942 JAK (KSx), 2024 WL 3086664 (CD. Cal. Jan. 8, 2024) 19

*Ulloa v. Securitas Security Services USA, Inc.*,
2023 WL 8720140 (N.D. Cal. Dec. 18, 2023) ....................7

*UMG Recordings, Inc. v. BCD Music Grp., Inc.*,
509 F.App'x 661 (9th Cir. 2013)....................15

*United States ex rel. Lee v. SmithKline Beecham, Inc.*,
245 F.3d 1048 (9th Cir. 2001)....................22

*Woolly Threads LLC v. Glass-U LLC*,
No. 19-cv-626-SDD-RLB, 2022 WL 17084373 4 (M.D. La. Nov. 18, 2022) ..22

**Statutes**

Cal. Civ. Code § 3439.04(a) ....................21
Cal. Civ. Code § 3439.05(a) ....................21
Cal. Corporations Code § 17708.01 ....................8
Fed. R. Civ. P. 15(a) ....................22

Plaintiff Processpoint Investments Limited ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss (ECF No. 63, the "Motion") filed by Defendants Anand Narayanan ("Narayanan"), Amy Tomchak ("Tomchak"), LCAP Advisors, LLC ("LCAP Advisors") and Cogent Eleven, LLC ("Cogent Eleven") (collectively, "Moving Defendants").[1]

## I. INTRODUCTION

Moving Defendants' Motion is premised on ignoring and attempting to contradict the express allegations of Plaintiff's Second Amended Complaint (ECF No. 38, the "SAC"). That is improper and should not be countenanced. In any event, the SAC sufficiently states claims against Moving Defendants based on their alleged bad acts, which include overt actions to frustrate Plaintiff's lawful attempts to collect its judgment against Pharma Funding.

*First,* the SAC sufficiently alleges that Moving Defendants are alter egos of Pharma Funding and should be held jointly and severally liable for Plaintiff's judgment against it. The SAC plausibly alleges that Moving Defendants dominated and controlled Pharma Funding, and that they used such power to commingle Pharma Funding's funds and assets with other entities under their control and to liquidate Pharma Funding's inventory once Plaintiff obtained its judgment, while providing none of the proceeds to Plaintiff. This culpable conduct has yielded manifestly unjust results: Plaintiff's judgment remains unsatisfied and, as Narayanan has conceded,

---

[1] Moving Defendants' Memorandum of Points and Authorities in support of their Motion (ECF No. 63-1) is referred to herein as the "Moving Defendants' Memorandum" or "Mov. Defs. Mem."

Defendants Pharma Funding, LLC ("Pharma Funding"), Pharma Funding ARAV, LLC ("Pharma ARAV"), and Wellness Funding, LLC ("Wellness Funding") have filed an Answer to Plaintiff's Second Amended Complaint (ECF No. 40) and do not join the instant Motion.

Pharma Funding has no tangible assets remaining against which Plaintiff could collect.

*Second*, the SAC also states a fraudulent transfer claim against Moving Defendants. While the Motion effectively fails to address this claim and should be denied in that respect, accordingly, the SAC plausibly alleges that Moving Defendants are liable not just as transferors but also as transferees, given the well-pled allegations of payments from Pharma Funding's bank accounts to them.

For the reasons set forth herein, the Motion should be denied.

## II. RELEVANT FACTUAL BACKGROUND[2]

Pharma Funding issued a Promissory Note to Plaintiff in 2019 (as amended, the "Note"), pursuant to which Plaintiff loaned $3,200,000 to Pharma Funding. *See* SAC ¶ 17. After Pharma Funding defaulted on the Note, Plaintiff sued and obtained a judgment against it in New York in January 2023 in the amount of $3,504,545.16, plus post-judgment interest. *Id.* ¶ 18 & Ex. A. Plaintiff has since domesticated its judgment against Pharma Funding in California and, later, Alabama. *Id.* ¶¶ 19, 21 & Ex. B. Nevertheless, virtually the entire amount of the judgment remains unsatisfied. *Id.* ¶¶ 3, 67.

Plaintiff took certain post-judgment discovery from Pharma Funding in connection with the domestication proceeding in California Superior Court, including a judgment-debtor examination of Narayanan, who testified in two sittings as Pharma Funding's corporate representative. *Id.* ¶ 20. Pharma Funding also produced certain financial documents to Plaintiff in connection with that

[2] The facts set forth herein are taken from the SAC. Moving Defendants have improperly requested that the Court take judicial notice of certain extrinsic (and disputed) "facts" in an attempt to contradict the SAC's factual allegations. As explained in the accompanying Response to Moving Defendants' Request for Judicial Notice, those requests should be denied.

domestication proceeding, including Pharma Funding's bank account statements. *Id.* ¶ 37. According to Narayanan's testimony at the debtor examination, Pharma Funding had been restructured (after Plaintiff provided its loan) to conduct business jointly with Pharma ARAV and Wellness Funding under the brand "Pulse Medical Finance." *Id.* ¶¶ 24, 30. The ownership structure of the various "Pulse Medical Entities" overlaps: Pharma ARAV is wholly owned by Pharma Funding, which is in turn wholly owned by Wellness Funding. *Id.* ¶¶ 25-27, 31.

Narayanan and Tomchak manage and control each of the three "Pulse Medical Finance" entities. *Id.* ¶¶ 26-30, 32. Narayanan and Tomchak each maintain indirect ownership interests in Wellness Funding (the parent at the top of the "Pulse Medical Finance" hierarchy) through their respective wholly-owned LLCs—LCAP Advisors (for Narayanan) and Cogent Eleven (for Tomchak)—which are members of Wellness Funding. *Id.* ¶¶ 29, 31. Narayanan testified regarding Wellness Funding: "I own it. My entity LCAP Advisors is a member of the Wellness Funding." *Id.*

Post-judgment discovery revealed that the "Pulse Medical Finance" entities operated together as a single entity controlled by and for the benefit of Narayanan and Tomchak. *Id.* ¶ 35. Among other things, the Pharma Funding bank statements produced demonstrate that the Pulse Medical Finance entities have all used the same bank account nominally owned by Pharma Funding and controlled by Narayanan and Tomchak (*id.* ¶¶ 37-38). The statements also reveal numerous intercompany transfers among Pharma ARAV, Pharma Funding and Wellness Funding, together with numerous transfers from Pharma Funding's accounts to Narayanan and Tomchak via LCAP Advisors and Cogent Eleven, respectively (including repeated payments of purported "management fees"). *Id.* While the Pulse Medical Finance entities initially filed consolidated tax returns, none of them have filed a tax return since 2021. *Id.* ¶ 36. Defendants failed to keep accurate accounting records and

failed to explain various intercompany transfers; indeed, Narayanan acknowledged that Pharma Funding, Wellness Funding and Pharma ARAV had not engaged an accountant or "done our books" since 2022. *Id.* ¶¶ 43-44.

The limited post-judgment discovery taken to date has also revealed that all Defendants—under the direction and control of Moving Defendants—have sought to frustrate Plaintiff's ability to collect its judgment. For instance, just as Plaintiff first obtained its judgment against Pharma Funding in early 2023, Pharma Funding simultaneously "liquidated" (in Narayanan's words) its remaining inventory, while providing none of the proceeds to Plaintiff. *Id* ¶¶ 5, 46-47. Defendants also began to claim that inventory which they had previously told Plaintiff was owned by Pharma Funding was actually owned by Pharma ARAV or Wellness Funding, and not Pharma Funding (and thus, according to Defendants, not applicable toward the judgment). *Id.* ¶¶ 39-45. When questioned regarding these inconsistencies, Defendants have dissembled and disclaimed that their previous accounting "may be inaccurate" and contains "mistakes." *Id.* ¶ 42-44, 68-76.

Defendants' reversals regarding Pharma Funding's assets and operations are belied not only by their past statements (including Tomchak's representations to Plaintiff) but also by their more recent conduct. Around the same time that Plaintiff had obtained its judgment in New York and was seeking to domesticate it in California, Defendants moved the remaining "Pulse Medical Finance" inventory from California to Alabama and Tennessee. *Id.* ¶¶ 54-55. Though Moving Defendants have since claimed that it was Pharma ARAV and/or Wellness Funding inventory that was moved, the Alabama warehouse lease was in Pharma Funding's name, and Pharma Funding made rent payments therefor. *Id.* ¶¶ 56-58. In any event, after Plaintiff registered its judgment in Alabama and initiated this action in Alabama state court seeking to recover whatever inventory remained in the state, Defendants sold it all to a third-party (on an invoice bearing Pharma Funding's

name). *Id.* ¶¶ 59-65. None of the proceeds from those sales were provided to Plaintiff, either. *Id.* ¶¶ 66-67.

In short, and as alleged in the SAC, Defendants—under the control of Narayanan and Tomchak—have transferred away Pharma Funding's assets in order to render it judgment-proof and unable to satisfy its obligations to Plaintiff. *Id.* ¶ 52. Narayanan has acknowledged that Pharma Funding has virtually "zero" money in its bank accounts, owns no real property, and has no tangible assets against which Plaintiff can execute. *Id.* ¶ 50-51.

## III. <u>RELEVANT PROCEDURAL HISTORY</u>

Plaintiff commenced this action on November 15, 2023 in the Circuit Court of Mobile County, Alabama (the "Alabama Court") against Pharma ARAV, Pharma Funding and Wellness Funding, seeking to recover certain nitrile gloves (allegedly owned by one or more of those entities) that were being stored in a warehouse in Mobile, Alabama. Plaintiff also named the warehouse owner in Alabama as a defendant in its original complaint.

Much of the activity to date in this action has been to limited to contempt proceedings against Pharma ARAV, Pharma Funding and Wellness Funding in connection with the removal of the at-issue gloves from the Mobile warehouse, after it was revealed—via affidavit from Narayanan—that the last gloves had purportedly been sold to a third-party and removed from the warehouse on November 28, 2023. That was the same day on which the Alabama Court had issued an order temporarily enjoining those Defendants from transferring or disposing of the gloves pending a hearing on Plaintiff's request for a writ of pre-judgment seizure. *See* ECF No. 1-1 at pgs. 162-163, 195-199. In light of that development, the Alabama Court issued an order on January 5, 2024 directing Pharma ARAV, Pharma Funding and Wellness Funding to "show cause why said defendants should not be held in contempt of court for violating the terms of" the November 28, 2023 Order. *See* ECF No. 1-1 at

pg. 215. The Alabama Court held a contempt hearing on February 6, 2024, which was continued on March 28 and 29, 2024. The Alabama Court ultimately declined to hold those defendants in contempt. *Id.* at pg. 619.

After the Alabama warehouse owner was dismissed from the action, Pharma ARAV, Pharma Funding and Wellness Funding removed the action to federal court on the basis of diversity jurisdiction. The parties then agreed to transfer the case to this District in July 2024. ECF No. 15. Plaintiff filed its Second Amended Complaint with the Court's leave in November 2024. *See* ECF Nos. 37, 38.

## IV. <u>ARGUMENT</u>

### A. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) should be denied if the complaint contains sufficient factual allegations to render the claim plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

In assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to plaintiffs." *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). Generally, "a court may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion," though the court "may take judicial notice of 'matters of public record … and may also consider documents

whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Ulloa v. Securitas Security Services USA, Inc.*, 2023 WL 8720140, at *2 (N.D. Cal. Dec. 18, 2023) (citing *Lee*, 250 F.3d at 688-89). However, the Court should not make factual determinations, and a defendant's factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6). *See Lee*, 250 F.3d at 688; *see also Johnson v. Knapp*, No. CV 02-9262-DSF (PJW), 2009 WL 764521, at *4 (C.D. Cal. Mar. 16, 2009) ("In a motion to dismiss, … the Court ignores Defendants' version of the facts and relies, instead, on Plaintiff's version contained in the Complaint and any inferences that can be drawn from it.").

## B. THE SAC STATES A CLAIM FOR ALTER EGO LIABILITY AGAINST MOVING DEFENDANTS

"The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests." *Mid–Century Ins. Co. v. Gardner*, 9 Cal.App.4th 1205, 1212 (1992). Under the doctrine, "a court may disregard the corporate entity and treat the corporations acts as if they were done by the persons actually controlling the corporation." *ConsumerDirect, Inc. v. Pentius, LLC*, No. 8:21-cv-1968-JVS, 2022 WL 1585702, at *3 (C.D. Ca. Apr. 4, 2022) (Selna, J.) (internal citation omitted). "Courts apply the doctrine when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose[.]" *Id.*

As in California, Delaware law likewise allows that "the corporate veil can be pierced, as a tool of equity, to disregard the existence of a corporation and impose liability on the corporation's individual principals and their personal assets. The alter ego doctrine for piercing the corporate veil allows derivative liability to be

placed upon a corporation's individuals." *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 469 (D. Del. 2010).[3]

Moving Defendants devote much of their Motion to arguing the unremarkable proposition that Delaware law governs the inquiry because Pharma Funding is organized under Delaware law. *See Pro 49 Dev., LLC v. Ness Express 1, LLC*, No. 24-cv-01850-JAM, 2024 WL 4712389, at *2 (E.D. Cal., Nov. 7, 2024) ("federal courts in California apply the law of the state of incorporation in assessing the alter ego of an LLC"); *see also* Cal. Corporations Code § 17708.01 (law of the state where a foreign limited liability company is formed governs the liability of its members and managers). In any event, it also has little bearing on the Motion, since the alter ego inquiries under Delaware and California law are fundamentally similar. *See In re Hydroxycut Marketing and Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1121-22 & n. 10 (S.D. Cal. 2011) (noting similarity of alter ego inquiry under Delaware and California law); *JPV I L.P. v. Koetting*, 88 Cal. App. 5th 172, 202 (2023) ("there is no indication that the application of Delaware alter ego law would lead to a different result" than California law).

To pierce the veil under Delaware law, a plaintiff must show (i) that the company and the party controlling it operated as a "single economic entity," and (ii) that an overall element of injustice or unfairness is present. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir.1995) (applying Delaware law). The inquiry considers a number of factors, including: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the

[3] Delaware courts use the terms "piercing the corporate veil" and "alter ego" interchangeably. *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 609 n.4 (D. Del. 2018).

dominant shareholder." *Manichaean Capital, LLC v. Exela Tech., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021); *see also Fletcher* 68 F.3d at 1458. While these "factors are useful, any single one of them is not determinative." *Manichaean Capital*, 251 A3d at 706-07. In other words, "the legal test for determining when a corporate form should be ignored in equity cannot be reduced to a single formula that is neither over- nor under-inclusive," given the unique factual circumstances of each case. *NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168, 177 (2d Cir. 2008). A plaintiff need not prove actual fraud but must show an "overall element of injustice or unfairness." *Id.* at 176.

"The alter ego inquiry under Delaware law is a 'fact intensive' one[,]" and courts have cautioned against resolving it at the motion to dismiss stage. *See McBeth v. Porges*, 171 F. Supp. 3d 216, 233 (S.D.N.Y. 2016) (citation omitted); *Blair*, 720 F. Supp. 2d at 474 ("The nature and extent of the dominion and control exercised by the [defendants] over the [subsidiaries] is a question of fact, not subject to resolution on a motion to dismiss.").

**i. The SAC Sufficiently Alleges that Moving Defendants Exercise Dominion and Control Over Pharma Funding**

The SAC sufficiently pleads numerous facts that reveal the fiction of corporate separateness and support holding Moving Defendants to be alter egos of Pharma Funding.

As an initial matter, the SAC sufficiently alleges that Narayanan and Tomchak are managers and principals of Pharma Funding (indirectly, via Wellness Funding, in which Narayanan's and Tomchak's respective wholly owned LLCs, LCAP Advisors and Cogent Eleven, are members). *See* SAC ¶¶ 28-32. The SAC further alleges facts indicating that Narayanan and Tomchak dominate and control Pharma ARAV, Pharma Funding and Wellness Funding: both have repeatedly held themselves out as the sole "managers" of both Pharma Funding and Wellness Funding (*e.g.*, SAC ¶¶ 26,

28-29, 32), and Narayanan has testified that he "own[s]" Wellness Funding (through LCAP) (SAC ¶ 29).[4] The SAC further alleges that Narayanan and Tomchak exercise control over Pharma Funding's operations and assets, including its bank accounts and inventory, and have made false statements to Plaintiff regarding Pharma Funding's purported inventory. *See, e.g., id.* ¶¶ 37-47.

Moving Defendants acknowledge their indirect interests in Wellness Funding (and, by extension, Pharma Funding), but suggest that they cannot be deemed alter egos unless they are the sole owners. Unsurprisingly, they offer no authorities in support of this proposition, as there is no such requirement. *See Tatung Co. Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138 (S.D. Cal. 2016) (applying California law, rejecting requirement of "complete ownership" and noting that courts "give more weight to whether the corporation is, in fact, controlled by the individual sought to be held liable…"). Nor does the indirect nature of Narayanan's and Tomchak's ownership interests in Pharma Funding prevent them from being deemed alter egos. *Official Comm. of Unsecured Creditors v. Reliance Capital Grp., Inc. (In re Buckhead Am. Corp.)*, 178 B.R. 956, 974-75 (D. Del. 1994) (noting that a direct parent-subsidiary relationship is not needed for an alter ego finding under Delaware law). Rather, the relevant inquiry is the dominion and control exercised over an entity, since the "purpose of alter ego is to prevent the corporate form from protecting the party actually responsible for an abuse of that form." *In re Kwok*, 663 B.R. 124, 144 (Bankr. D. Conn. 2023) (applying Delaware law); *see also Pacific Biosciences of California, Inc. v. Oxford Nanopore Tech., Inc.*, C.A. No. 17-275-LPS, 2019 WL 1789781 at *2 (D. Del. Apr. 24, 2019) (denying motion to dismiss where complaint plausibly alleges

[4] Moving Defendants are also represented in this action by the same attorney who represents Pharma Funding, Pharma ARAV, and Wellness Funding.

that defendant "exercises dominion and control"). Here, the SAC makes that showing as to Moving Defendants.

The SAC expressly alleges that Pharma Funding was undercapitalized and insolvent at all relevant times, *see* SAC ¶¶ 88, 92, 100, evidenced by (among other things) the fact that Pharma Funding defaulted on the Note which gave rise to Plaintiff's original lawsuit against Pharma Funding, and further by the fact that Plaintiff's judgment against Pharma Funding remains unsatisfied to date despite its efforts to collect. *See, e.g., id.* ¶¶ 3, 17, 18., 67. Significantly, Narayanan has admitted—in sworn testimony as Pharma Funding's corporate representative in 2023—that Pharma Funding had virtually "zero" money in its bank accounts or other tangible assets. *Id.* ¶ 50. He further admitted that Pharma Funding is unable to meet its obligations under the Judgment. *See id.* ¶¶ 51-52. Each of these allegations (and admissions by Narayanan) more than suffices to show the undercapitalization and insolvency of Pharma Funding. *See Pro 49 Dev., LLC*, 2024 WL 4712389, at *3 (applying Delaware law; complaint plausibly alleged undercapitalization and insolvency based on entity's admission that it was financially unable to meet its obligations); *see also McBeth*, 171 F. Supp. 3d at 234 (complaint plausibly alleges undercapitalization when it alleges that defendants "lacked sufficient capital to cover their own reasonably anticipated expenses"); *see Manichaean Capital*, 251 A.3d at 707 (insolvency adequately pled if a plaintiff's allegations allow a reasonable inference of either (1) a deficiency of assets below liabilities with no reasonable prospect that the business can be successfully continued in the face thereof or (2) an inability to meet maturing obligations as they fall due in the ordinary course of business).

In an apparent attempt to avoid the SAC's well-pled allegations, Moving Defendants suggest that a plaintiff is required to prove that the company was always undercapitalized or insolvent—in other words, that Pharma Funding was "a sham

entity" from the outset. Mov. Defs. Mem. at 13-14. Moving Defendants' contentions are legally incorrect and irrelevant—a party seeking to pierce the corporate veil "need not prove that the corporation was created with fraud or unfairness in mind. It is sufficient to prove that it was so used." *NetJets*, 537 F.3d at 177 (applying Delaware law); *see also JPV I L.P*, 88 Cal. App. 5th at 203 (same). That abuse of the corporate form is precisely what the SAC alleges here: the crux of Plaintiff's claim is that Narayanan and Tomchak—as the principals and managers who dominated and controlled Pharma Funding (and the other defendant entities)—were responsible for stripping Pharma Funding of whatever assets it previously had, in order to render Pharma Funding insolvent so that Plaintiff would be unable to collect on the debt owed to it. Indeed, the SAC plausibly alleges that Narayanan and Tomchak knowingly and deliberately undertook these actions, including by fraudulently transferring its assets away to other entities under their control and to third parties, and also by siphoning funds to themselves (including under the guise of purported "management fees" to LCAP Advisors and Cogent Eleven). SAC ¶¶ 37-43, 77, 87-88. Taken together, these allegations more than suffice to demonstrate the undercapitalization, insolvency and siphoning factors, at minimum. *See, e.g., Essar Steel Algoma, Inc. v. Nev. Holdings, Inc.*, No. 17 Misc. 360 (AT), 2020 WL 2539031, at *4 (S.D.N.Y. May 18, 2020) (applying Delaware law; denying motion to dismiss and finding undercapitalization where corporation allegedly transferred assets, leaving it "unable to perform its contractual obligations and rendering it judgment-proof"); *Mark Tucker, Inc. v. Cathy Jean Inc.*, No. SACV 16-01095 JVS, 2016 WL 10988799 at *3 (C.D. Cal. Sept. 16, 2016) (denying motion to dismiss and noting allegations that, *inter alia*, company "sold its inventory, but it failed to pay [creditor plaintiff]" and that company's officers had "transferred money and assets of [company] to themselves for their own personal use and benefit and to avoid creditors").

The SAC also expressly alleges that Pharma Funding failed to observe corporate formalities, despite Moving Defendants' bald assertion to the contrary. *See, e.g.*, SAC ¶ 77, 84. Moreover, the SAC contains ample factual support for that contention. Among other things, the SAC alleges that:

- Pharma Funding commingled funds with other entities managed by Narayanan and Tomchak (Wellness Funding and Pharma ARAV) by, among other things, using a shared bank account (controlled by Narayanan and Tomchak) and making repeated intercompany transfers to those entities and to LCAP Advisors and Cogent Eleven. SAC ¶¶ 37, 38.
- Pharma Funding commingled inventory with other entities managed by Narayanan and Tomchak (Wellness Funding and Pharma ARAV), with Tomchak falsely representing to Plaintiff that all such inventory belonged to Pharma Funding. SAC ¶¶ 39-42.
- Defendants failed to keep accurate accounting records and are unable to explain various intercompany transfers, with Narayanan admitting that Pharma Funding, Wellness Funding and Pharma ARAV had not engaged an accountant or "done our books" since 2022. *See* SAC ¶¶ 43-44. Narayanan has further acknowledged "mistakes" in attributing assets to entities, and that they "maybe haven't" reconciled those "mistakes." *Id.* ¶ 76.
- Pharma Funding, Wellness Funding or Pharma ARAV have not filed tax returns since 2021. SAC ¶¶ 36, 84.

While Moving Defendants unsurprisingly address none of this in their Motion, courts have consistently found that such allegations support an alter ego claim. *See, e.g.*, *TradeWinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901, 2012 WL 983575 (S.D.N.Y. Mar. 22, 2012) (applying Delaware law; denying motion to dismiss alter ego claim

and finding that plaintiff had sufficiently alleged defendants operated as "single economic entity" where defendants were alleged to have "disregarded corporate formalities, failed to keep proper records, and comingled [entity's] funds with those of other companies"); *Blair*, 720 F. Supp. 2d at 472 (plaintiff satisfied "single entity" test by alleging "gross undercapitalization; failure to observe corporate formalities; insolvency; and siphoning").

Moving Defendants, meanwhile, attack the SAC's well-pled allegations of commingling funds and intercompany transfers as "false" and instead offer their own extrinsic factual contentions, such as Tomchak's claim that she supposedly loaned money to Pharma Funding. Mov. Defs. Mem. at 15. That is, of course, not permitted on a Rule 12(b)(6) motion. *See supra* at 6-7. There are multiple issues with Moving Defendants' approach. First, Moving Defendants may not rely upon Narayanan's and Tomchak's self-serving affidavits and testimony for the truth of the matters asserted therein (even assuming *arguendo* that their affidavits could be deemed "public records"). *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (on a motion to dismiss, a court cannot take judicial notice of disputed facts contained in public records); *see also Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-cv-912-IEG, 2008 WL 346421, at *8 (S.D. Cal. Feb. 6, 2008) ("The kind of things about which courts ordinarily take judicial notice are (1) scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958."). Second, even if it were permissible for the Court to consider their various factual averments (it is not), it would simply show the existence of a factual dispute which is not properly resolved on a motion to dismiss. *See supra* at 6-7; *see also Alba v. City of Barstow*, No. EDCV 18-2087 (JGB), 2019 WL 6703426, at *3 (C.D. Cal. Oct. 30, 2019) (rejecting defendants' attempt to use extrinsic evidence

to create a factual dispute with the allegations, since a motion to dismiss does not resolve factual disputes).

Likewise, Moving Defendants miss the mark with their purported critiques of certain allegations being made "upon information and belief." It is well established that a plaintiff may "plead[] facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). Such pleading is especially common (and accepted) "in cases of corporate fraud, [where] plaintiffs will not have personal knowledge of all of the underlying facts." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). To the extent the SAC's allegations are "upon information and belief", it is because they are based in part on Narayanan's statements and testimony regarding Defendants' business and operations, as well as the limited document productions that Plaintiff has received to date from Pharma Funding. At a minimum, the SAC's allegations are sufficiently specific to "identify the contours of an alter ego claim" to enable Moving Defendants to prepare a response, and the remaining facts will be developed in discovery. *Laguna v. Coverall North America, Inc.*, No. 09cv2131 JM, 2009 WL 5125606, at *3 (S.D. Cal. Dec. 18, 2009) (denying motion to dismiss alter ego claim).

**ii. The SAC Sufficiently Alleges Unfairness and Injustice**

In determining whether to pierce the corporate veil, courts also consider whether an overall element of injustice or unfairness is present. *See NetJets*, 537 F.3d at 177 ("[C]ourts look behind the corporate curtain generally where the facts indicate that the corporate entity has been or is being used by those in control ... to promote injustice."). The SAC easily meets this standard, as the above-mentioned allegations demonstrate the requisite injustice and unfairness faced by Plaintiff. *See UMG Recordings, Inc. v. BCD Music Grp., Inc.*, 509 F.App'x 661, 662 (9th Cir. 2013) (affirming alter ego finding where "district court reasonably could have determined

that [debtor's] would not pay its judgment debt (leading to an inequitable result) unless the corporate veil were pierced, based on evidence regarding [debtor's] financial condition and its failure to make payments to [judgment-creditor]."

Courts have allowed alter ego claims to proceed in similar circumstances where a judgment-creditor's collection attempts are frustrated by transfers of the judgment-debtor's assets. *See, e.g., Essar Steel*, 2020 WL 2539031, at *4 ("allegations of undercapitalization and siphoning of funds are sufficient to satisfy the 'injustice or unfairness' element" under Delaware law); *TradeWinds Airlines, Inc. v. Soros*, 2012 WL 983575 at *7 (allegation that defendants transferred funds from a corporation and left it undercapitalized, thereby "depriv[ing] Plaintiffs of the ability to recover damages" on their claim against that corporation, was sufficient to show fundamental injustice; denying motion to dismiss alter ego claim).

Moving Defendants come close to conceding this point in their Motion (as they must), as they acknowledge that the SAC "suggests some of the substantive elements of inequitable conduct." *See* Mov. Defs. Mem. at 16. While Moving Defendants assert that the SAC fails to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b), that argument is a red herring: a well-pled alter ego claim does not require a showing of fraud (as opposed to unfairness or injustice). *See Fletcher*, 68 F.3d at 1457 ("Under Delaware law, the alter ego theory of liability does not require any showing of fraud."); *Gourdine v. Karl Storz Endoscopy-Am., Inc.*, 223 F. Supp. 3d 475, 491-92 (D.S.C. 2016) ("Equity is the most important consideration. But a showing of fraud or wrongdoing is not necessary; rather, it is sufficient that it *appear* that recognition of the acts as those of a corporation only will produce inequitable results." (emphasis in original)). Along those same lines, this Court has previously held that alter ego claims are governed by Rule 8(a), not Rule 9(b). *See*

*ConsumerDirect, Inc.*, 2022 WL 1585702, at *3 (applying Rule 8(a) to alter ego claim and declining to apply Rule 9(b)).[5]

In any event, the SAC would still state an alter ego claim even if a heightened pleading standard were deemed applicable. In short: the SAC alleges that Narayanan and Tomchak controlled Pharma Funding and liquidated its assets (including by cash transfers to themselves and transferring funds and inventory to other entities under their control) for the purpose of avoiding Pharma Funding's obligations to Plaintiff. The SAC further alleges that Narayanan and Tomchak deliberately concealed information and that Tomchak made misrepresentations and provided false documents to Plaintiff regarding Pharma Funding's assets. *See* SAC ¶¶ 39-42. Defendants have since admitted their statements were "inaccurate" (*id.* ¶ 43). Such misrepresentations induced Plaintiff to believe that Pharma Funding had greater assets than it did. Additionally, the SAC alleges facts which strongly suggest that Narayanan gave false testimony regarding the liquidation of inventory and sales of assets to third-party Romeo Valentino. *See* SAC ¶¶ 47-48, 68-71. Thus, even if fraud or bad faith were required, it has been sufficiently alleged in the SAC.

Compounding the injustice, Moving Defendants appear to have succeeded thus far in making Pharma Funding judgment-proof; by Narayanan's own admission, Pharma Funding has had no assets remaining and is unable to satisfy Plaintiff's judgment. SAC ¶¶ 45, 50-52. Moreover, the SAC includes numerous specific allegations regarding the highly suspicious (to say the least) timing of the "liquidation" of Pharma Funding's remaining assets, undertaken under the direction

---

[5] By contrast, Moving Defendants cite only inapposite cases, none of which concerned alter ego claims. *Ferguson Beauregard/Logic v. Mega Sys.*, 350 F.3d 1327, 1344 (Fed. Cir. 2003); *Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir. 1980); *King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008 (C.C.P.A. 1981).

and control of Narayanan and Tomchak in early 2023 (*i.e.*, just after Plaintiff had been awarded its judgment against Pharma Funding). *See* SAC ¶ 46. While Narayanan has since claimed (dubiously) not to remember any of the basic details of the asset sales, his demonstrated control over Pharma Funding's assets and operations suggests that his apparent amnesia was a ruse meant to mislead Plaintiff (as plausibly alleged in the SAC). *See* SAC ¶¶ 47-48. In any event, it does not appear that Pharma Funding received any proceeds in exchange for this supposed "liquidation"; if it did, none went toward satisfaction of Plaintiff's judgment. *Id.* ¶ 49. The concerning timing of this "liquidation" further supports an alter ego finding here. *Cf. JPV I L.P.*, 88 Cal. App. 5th at 200-01 (evidence that debtor entities' bank accounts were emptied shortly after the judgment was entered against—leaving plaintiff unable to collect—supported alter ego finding; reversing denial of motion to amend judgment).

Making matters worse, Narayanan and Tomchak also caused the remaining inventory—which they now contend was owned by the "other" Pulse Medical Finance entities—to be moved out of California to warehouses in Alabama and Tennessee in the first months of 2023. *See* SAC ¶¶ 54-56. They have since claimed (dubiously) that none of that inventory belonged to Pharma Funding, even though (i) Pharma Funding leased the warehouse in Alabama and (ii) rent payments came from Pharma Funding's bank account. *Id.* ¶¶ 57-58. Once again, the timing of the inventory movements strongly supports an inference of bad faith attempts at judgment evasion.

But Defendants' "cat and mouse" game did not end there, as the SAC shows. After Plaintiff registered its judgment in Alabama and commenced a lawsuit to recover the inventory located there, Defendants—under the direction and control of Narayanan and Tomchak—continued their efforts to evade Plaintiff's judgment by selling the remaining inventory in Alabama, even as they were aware of—and had been served with—Plaintiff's complaint in Alabama seeking to recover those gloves.

*See* SAC ¶¶ 59-64. Once again, none of the proceeds from any such sales went to Plaintiff. *See* SAC ¶¶ 66-67.[6]

Taken together, the SAC's well-pled allegations strongly support a showing of injustice and more than sufficient to state an alter ego claim against Moving Defendants. *See Triller Fight Club II LLC v. H3 Podcast*, Case No. LA CV21-03942 JAK (KSx), 2024 WL 3086664, at *5 (CD. Cal. Jan. 8, 2024) (denying motion to dismiss alter ego claim where complaint alleged, among other things, that "many assets" of entities were transferred without adequate consideration); *Pipeline Prods., Inc., Pipeline Prods., Inc. v. Madison Companies, LLC*, 428 F. Supp. 3d 591, 601-602 (D. Kan. 2019) (finding alter ego claim well pled where individual defendants allegedly "initiated a shell game by making a series of transactions through various entities" and left original defendant entities "as shell corporations that have almost no assets").

The Court should decline to dismiss the alter ego claim against Moving Defendants, accordingly.

### C. MOVING DEFENDANTS FAIL TO ADDRESS THE VOIDABLE TRANSACTION CLAIM, WHICH IS SUFFICIENTLY PLED IN ANY EVENT

The SAC's second cause of action—for fraudulent transfer under the California Uniform Voidable Transaction Act ("UVTA")—is sufficiently pled and should not be dismissed, regardless of whether the Court finds the alter ego claim to be well pled.

As a threshold matter, the UVTA claim is effectively omitted from Moving Defendants' motion. At best, Moving Defendants summarily assert that, because the

[6] These apparent transfers of assets (purportedly from Pharma ARAV) to other entities also supports an inference that Pharma ARAV and/or Wellness Funding have also been stripped of their assets and left undercapitalized. This underscores why Moving Defendants should face alter ego liability for Plaintiff's judgment, as well.

SAC purportedly does not state an alter ego claim, there can be no UVTA claim. *See* Mov. Defs. Mem. at 6. However, they do not offer any argument or authorities regarding this conclusory assertion or otherwise address the UVTA claim in their Memorandum. On that basis alone, the Motion should be denied as to the UVTA claim. *See Ma v. Chertoff*, No. 07CV0033 JAH(POR), 2007 WL 2462103, at *2 (S.D. Cal. Aug. 27, 2007) (denying motion to dismiss under where defendants "present no argument or authority pursuant … other than a general statement indicating plaintiff's complaint fails to state a claim upon which relief may be granted."); *see also Ayo v. Dunn*, No. 17-cv-526-SDD, 2018 WL 4355199, at *1 (M.D. La. Sept. 12, 2018) (denying motion to dismiss where defendants failed to brief the elements of at-issue claims and failed to argue how the complaint fails to state a claim).

But even if the Court were to consider it with the instant Motion, the UVTA claim sufficiently states a claim for actual and constructive fraudulent transfers as against Moving Defendants. The purpose of the UVTA is "to prevent debtors from placing property which legitimately should be available for the satisfaction of demands of creditors beyond creditors' reach." *CGI Tech. and Solutions Inc. v. Acacio*, No. SACV 17-1943 JVS (KESx), 2019 WL 7882368, at *3 (C.D. Cal.Mar. 26, 2019) (Selna, J.) (quoting *Tatung Co. Ltd.*, 217 F. Supp. 3d at 1186). "A voidable transaction is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." *Id.* The UVTA provides for a cause of action by a creditor against a debtor-transferor and/or a transferee. *Jiaxing Super Lighting Elec. Appliance Co. v. Bruggeman*, No. 21-cv-08489-MMC2022 WL 17404300, at *3 (N.D. Cal. Dec. 2, 2022). To state a claim for actual fraudulent transfer, a plaintiff must allege that a debtor made a transfer or incurred an obligation with actual intent to hinder, delay or defraud any creditor of the debtor; meanwhile, to state a claim for constructive

fraudulent transfer, a plaintiff must allege that a debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange and the debtor was insolvent at the time or became insolvent as a result of the transfer or obligation. *Id.* (citing Cal. Civ. Code §§ 3439.04(a), 3439.05(a)).

Here, the SAC meets the standard for both types of fraudulent transfers. The SAC alleges that Pharma Funding—under the direction and control of Narayanan and Tomchak—transferred away assets for the purpose of frustrating Plaintiff's ability to collect the debt owed to it. That includes, without limitation: (i) transferring funds and inventory from Pharma Funding to the other purported "Pulse Medical Finance" entities under Moving Defendants' control (*i.e.*, Pharma ARAV and Wellness Funding); (ii) "liquidating" Pharma Funding's remaining inventory shortly after Plaintiff obtained its award against Pharma Funding; and (iii) transferring inventory purportedly owned by the other "Pulse Medical Finance" entities to third parties in order to further thwart Plaintiff's collection efforts. *See, e.g.*, SAC ¶¶ 37-46, 60-67, 78. The SAC also alleges that Pharma Funding transferred funds to Narayanan and Tomchak (via LCAP Advisors and Cogent Eleven), making Moving Defendants liable as transferees under the UVTA, as well (even assuming *arguendo* that they could not be deemed transferors as alter egos of Pharma Funding). *See* SAC ¶¶ 37, 77, 87, 93.[7]

This Court has previously found a fraudulent transfer claim against a judgment-debtor entity's managers to be well-pled in similar circumstances, based on the individuals' alleged transfers of debtor's assets to themselves and to other entities under their control:

---

[7] The SAC also states a constructive fraudulent transfer claim, alleging with ample detail (including Narayanan's own statements) that Pharma Funding did not receive reasonably equivalent value in exchange for its transfers, and that it was left insolvent and with unreasonably small assets, accordingly. *See* SAC ¶¶ 49-52.

> The Complaint alleges that Infinite, under the direction and control of [individual defendants] Acacio and Conway, transferred all of its assets to Infinite S.A. and/or to Acacio, Conway, or others. Such transfer(s) were concealed from [plaintiff], and were made after [plaintiff] requested the return of mistakenly transferred funds and after CGI filed its claim against Infinite in arbitration. Infinite did not receive reasonably equivalent value for the transfer(s), leaving Infinite depleted. The transfer(s) were thus intended to hinder, delay, or defraud [plaintiff]. Infinite, Acacio, and Conway were aware that Infinite would incur debts beyond its ability to pay as they became due, prompting the transfer(s); as a result, there are no remaining funds or assets of Infinite to satisfy [plaintiff's] judgment against it.

C*GI Tech.*, 2019 WL 7882368, at *3 (Selna, J.) (granting default judgment on UVTA claim and awarding damages against all defendants, jointly and severally).

Here, too, the claims are well pled: the SAC's allegations sufficiently put Moving Defendants on notice of the claims against them (especially considering that much of the information regarding the transfers between and among Defendants remains in the sole possession of Defendants). The Court should decline to dismiss the UVTA claim, accordingly.

### D. TO THE EXTENT THE COURT IS INCLINED TO GRANT THE MOTION, LEAVE TO AMEND SHOULD BE GRANTED

While Plaintiff believes that it has alleged sufficient facts to support each of its claims alleged in the SAC, in the alternative that this Court finds that Plaintiff has not done so, Plaintiff respectfully requests leave to amend, which should be freely granted when justice so requires. Fed. R. Civ. P. 15(a); *see also United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) ("[L]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts"). Moreover, Plaintiff has not previously amended its pleading due to any factual deficiencies. *See Woolly Threads*

*LLC v. Glass-U LLC*, No. 19-cv-626-SDD-RLB, 2022 WL 17084373, at *4 (M.D. La. Nov. 18, 2022) (granting leave to amend where plaintiff's previous amendments to complaint were not "due to a 12(b)(6) deficiency").

## V. <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff respectfully requests that Moving Defendants' Motion be denied in full.

DATED: March 10, 2025

SCHWARTZ SEMERDJIAN CAULEY SCHENA & BUSH LLP

By: *_/s/ Mark E. Bale_*_____________
Mark E. Bale

Attorney for Plaintiff PROCESSPOINT INVESTMENTS LIMITED

## <u>L.R. 11-6.2. CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff Processpoint Investments Limited, certifies that this brief contains 6,955 words, which complies with the word limit of L.R. 11-6.1.

By: *_/s/ Mark E. Bale_*__________________
Mark E. Bale